Payne Decl.
# EXHIBIT IP-6

Aug. 6, 2020 Demand Letter



315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300

FOR SETTLEMENT PURPOSES ONLY

August 6, 2020

**VIA EMAIL AND U.S. MAIL**

Paula Wallace
President
Savannah College of Art and Design
516 Drayton Street
Savannah, GA 31401
███████@scad.edu

Lesley Hanak
Senior Vice President for Human Resources
Savannah College of Art and Design
516 Drayton Street
Savannah, GA 31401
███████@scad.edu

Hannah Flower
Vice President for International Student Services and Legal Affairs
Savannah College of Art and Design
1600 Peachtree Street, NW
Atlanta, GA  30309
███████@scad.edu

**Re:    Race discrimination against Isaac Payne**

Dear Ms. Wallace, Ms. Hanak, and Ms. Flower:

Isaac Payne has retained our firm to represent him in race discrimination claims against the Savannah College of Art and Design (SCAD).  Mr. Payne was Men's and Women's Head Fishing Coach at SCAD from August 2015 until his employment was terminated on March 5, 2018.

Paula Wallace
Lesley Hanak
Hannah Flower
August 6, 2020
Page 2

    I.       Background

As you know, Mr. Payne was a superb coach at SCAD, and his teams were successful under his guidance. This success came as a result of Mr. Payne's tireless work and talented leadership. Like practically every collegiate athletic coach, Mr. Payne was revered by some and disliked by others. Unfortunately, some of the loudest criticism—and ultimately the criticism that led SCAD to fire Mr. Payne—was directed at Mr. Payne because he is Black, or, as one student preferred to call him (with no consequence to the student), a "piece of shit n**."

The men's and women's fishing teams had two factions. One faction was serious both about academics and athletics. This group had high praise for Mr. Payne. The other group was the "party crowd." With a sense of white entitlement—and with impunity—they drank heavily, used illegal drugs, flashed firearms and other weapons when they felt threatened, and two member of that crowd were accused of rape (as required by Title IX, Mr. Payne appropriately and immediately reported the alleged rape when he learned of it, but every indication is that SCAD ignored the report and instead retaliated against Mr. Payne). Not surprisingly, some of them also struggled academically and missed practices. When Mr. Payne tried to rein in their behavior, including suspending students who did not meet the academic achievement requirements to remain on the team or who missed mandatory practices, they lashed out and targeted Mr. Payne in a way he would not have been targeted if he were white.

A former Marine and decorated combat veteran, Mr. Payne was tough – but appropriately so – on student athletes who engaged in destructive behavior or lacked the discipline to participate in a competitive sport. However, this toughness coming from a white coach would have been accepted and even expected under the circumstances. Coming from the only Black coach on his floor at SCAD—directed at an *all white* team (with the exception of one black student Mr. Payne recruited, but who left the team in part because of the climate of racism) in a competitive sport with a long history of near-exclusive whiteness and a culture of white supremacy—was more than some of the students and their parents could tolerate. They were determined to undermine Mr. Payne's leadership and make his work at SCAD hellish. Ultimately, they persuaded SCAD to have him fired.

In short, but for Mr. Payne's race, he would not have endured the abuse he experienced as fishing coach at SCAD, and ultimately, SCAD would not have fired him. This is a quintessential case of race-based discrimination.

    II.      Demand

SCAD's race discrimination violated 42 U.S.C. § 1981 ("Section 1981"). Mr. Payne is prepared to file litigation in federal court. However, he would first like to explore whether his claims can be resolved amicably.

Mr. Payne has suffered tremendous harm as a consequence of his treatment at SCAD. Not only did he lose a prestigious and highly competitive job and the reputational, emotional, and

Paula Wallace
Lesley Hanak
Hannah Flower
August 6, 2020
Page 3

economic harm that entails, but he endured the emotional distress of facing flagrant racism, including threats and racial epithets, in an environment of impunity for the students and parents who engaged in the racist behavior. The emotional distress Mr. Payne experienced is concrete and documented.

Damages awards in Section 1981 cases are not capped, and they may include both compensatory and punitive damages. As such, juries award significant verdicts. *See, e.g., Rufo v. Aclara Technologies, LLC*, No. 1:18-cv-0037 (E.D. Va. 2018) ($735,000, not including attorneys' fees and front pay); *David v. Signal Int'l, LLC*, No. 2:08-cv-01220-SM-DEK (E.D. La. 2015) (ranging from $539,585 to $593,475 each for five plaintiffs, exclusive of damages for other claims and attorneys' fees); *cf. Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003) (upholding jury verdict of $3 million in compensatory and punitive damages for each plaintiff in Section 1983 race-based employment discrimination case).

Mr. Payne is willing to settle his claims for ▮▮▮▮▮▮, plus reasonable attorneys' fees. In addition, Mr. Payne is encouraged by SCAD's recent statements of solidarity and planned proactive measures to address racial injustice. *See, e.g.,* Paula Wallace, *SCAD actions to create positive change* (June 11, 2020), https://www.scad.edu/about/scad-glance/inclusion-scad. However, more is needed to provide protections and assurances to Black faculty that they will not be disciplined as a result of race-based targeting by students and parents. In addition to the reforms President Wallace announced in her June 11 communiqué, Mr. Payne demands the following:

- Engage in an *open and public* dialogue with current and former faculty, staff, and students regarding SCAD's history of racism, with the goal of proactively implementing measures to ensure reconciliation, reparations, and a future of diversity, equity, and inclusion.
- Hire an Equity Ombudsperson, who would work within SCAD's new Office of Inclusion, (1) to engage directly with faculty, staff, and students when allegations of racial bias arise and to use restorative justice tools, when possible, to reach resolution; and (2) to connect faculty, staff, and students who have experienced racial bias to free mental health services.
- Exempt allegations of racial bias and discrimination from employee confidentiality agreements and policies.
- Implement and Enforce SCAD's zero-tolerance policy with respect to weapons, as set forth in its Code of Student Conduct. Immediately remove and report to law enforcement any student who has used or displayed a weapon in a manner perceived as a threat.
- Forced arbitration silences faculty and staff who have experienced race discrimination. *See* Alexander J.S. Colvin, *The growing use of mandatory arbitration*, Economic Policy Institute (Apr. 6, 2018), https://www.epi.org/publication/the-growing-use-of-mandatory-arbitration-access-to-the-courts-is-now-barred-for-more-than-60-million-american-workers/.

Paula Wallace
Lesley Hanak
Hannah Flower
August 6, 2020
Page 4

This is inconsistent with SCAD's public image as a progressive institution.[1] Arbitration should be replaced with policies designed to bring about restorative justice and an uncontroverted right to pursue legal remedies in court when necessary.

Please respond to this letter, or have your legal counsel respond to this letter, by August 14, 2020. Because our legal team is working remotely due to COVID-19, I ask that you send any response to my email address: ███@decaturlegal.com. You may reach me on my mobile phone – ███████ – if you would like to discuss Mr. Payne's claims.

Very truly yours,

Daniel Werner
Attorney at Law

cc:     Isaac Payne

---

[1] It is our position that SCAD's arbitration provisions are not enforceable. Nevertheless, they dissuade faculty and staff from enforcing their right to a workplace free of discrimination.