IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Isaac Payne, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| v. | ) | 1:20-cv-05000-JPB-CMS |
| | ) | |
| The Savannah College of Art and Design, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## **Memorandum of Law in Support of Motion to Take Limited Early Discovery on Issues of Arbitrability**

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff Isaac Payne ("Plaintiff") moves this Court for an order permitting early limited discovery concerning the transactions upon which Defendant The Savannah College of Art and Design, Inc. ("Defendant" or "SCAD") bases its Renewed Motion to Dismiss and to Compel Arbitration, ECF Nos. 20 (Motion) and 28 (Reply), and upon which Plaintiff would file a summary judgment motion seeking a declaratory judgment on the issue of arbitrability.

## I.    PROCEDURAL HISTORY

On December 10, 2020, Plaintiff filed this action seeking relief pursuant to 42 U.S.C. § 1981 for employment discrimination and retaliation he suffered while he was employed as the Head Coach of SCAD's Fishing Teams. ECF No. 1. In the same action, Plaintiff sought a declaratory judgment on arbitrability. *Id.* at ¶¶ 117-121.

Defendant filed its initial Motion to Dismiss and to Compel Arbitration on January 11, 2021. ECF No. 5. On January 28, 2021, the parties filed a Joint Motion to Extend Pre-Discovery Deadlines.  ECF No. 11.  The motion sought an extension of the Local Rule 16 and 26 pre-discovery deadlines, including the deadline to hold the Fed. R. Civ. P. 26(f) conference and to file the related Joint Preliminary Report and Discovery Plan, "until at least fourteen (14) and twenty-eight (28) days, respectively, after the Court rules on the Motion to Dismiss *or grants Plaintiff's request for early limited discovery on arbitrability.*" *Id.* at 4 (emphasis added).  The Court granted the joint motion the following day.  ECF No. 12.

Plaintiff later filed his First Amended Complaint ("FAC") clarifying certain points and providing additional detail both to the Section 1981 and the declaratory judgment claims.  ECF No. 13 at ¶¶ 80-117, 132-138. The Court therefore denied Defendant's initial Motion without prejudice as moot. ECF Nos. 14 (Report and

Recommendation) & 19 (Order approving and adopting Report and Recommendation).[1]

On February 26, 2021, Defendant filed a Renewed Motion to Dismiss and to Compel Arbitration ("MTCA"). ECF No. 20. In its MTCA, Defendant relies heavily on and attempts to refute the facts and legal bases for a declaratory judgment Plaintiff sets forth in his FAC. *Id.* Plaintiff filed his opposition to the MTCA on March 26, 2021. ECF No. 26 ("MTCA Opp'n"). Defendant filed its reply brief on April 23, 2021. ECF No. 28 ("MTCA Reply").

In his MTCA Opp'n, Plaintiff detailed (1) how Defendant failed to provide proof of the formation of the governing contract; (2) that there was no "clear and unmistakable" delegation to the arbitrator to determine arbitrability; (3) that the terms of Defendant's arbitration rules and procedures are indefinite and unconscionable; and (4) that Defendant waived any right it arguably had to arbitration through its conduct. MTCA Opp'n, ECF No. 26. As such, there is no need to repeat the facts and arguments here. Plaintiff also briefly argued that he should be entitled to limited discovery. *Id.* at 34.

---

[1] On Defendant's consent motion, ECF No. 17, the Court subsequently entered an order indicating that "all references to 'Defendant's Motion to Dismiss'" in the Court's prior order extending the Rule 16 and 26 deadlines, "shall be deemed to refer to Defendant's anticipated Renewed Motion to Dismiss and to Compel Arbitration." ECF No. 18.

Defendant's MTCA Reply raised new factual issues.  ECF Nos. 28 (Reply), 28-1 (Apr. 23, 2021 Decl. of Dr. Phil Aleto), and 28-2 (Apr. 23, 2021 Decl. of Joseph M. English).  Plaintiff will discuss those new issues narrowly only insofar as they impact the need for discovery.

On April 27, 2021, the undersigned Plaintiff's counsel reached out to Defendant's counsel indicating Plaintiff's intent to file a motion to take early discovery on issues related to arbitrability.  *See* Fed. R. Civ. P. 37(a)(1) Certification of Counsel (attached hereto).  On April 30, 2021 the undersigned counsel and Joseph English, counsel for Defendant, conferred in good faith regarding the relief Plaintiff seeks in the instant motion.  The parties were not able to reach an agreement to resolve the matter without court action.  *Id.*

## II.    ARGUMENT

### A. Scope of Plaintiff's Motion

A portion of Plaintiff's arguments in his MTCA Opposition rests on Defendant's failure to meet its burden of provide proof of a governing contract. If the Court determines Defendant did meet its burden based on the language of the Alternative Dispute Resolution Policy and Agreement ("ADRPA"), the instant motion is moot and early limited discovery would not be needed.  *See Reed v. Eastside Med. Ctr.*, LLC, No. 1:19-CV-03967-SDG, 2020 WL 5659436, at *7 (N.D. Ga.

Sept. 23, 2020) ("If there is no genuine dispute as to any material fact concerning the formation of the arbitration agreement, then the Court may 'conclude as a matter of law' that the parties did not enter into such an agreement") (quoting *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)).  Similarly, if the Court finds Defendant did meet its burden to show the existence of a governing contract, but the Court determines Plaintiff's claims are not arbitrable based on the indeterminate and unconscionable terms of the ADRPA and arbitration Procedures Manual ("APM"), this motion again would be moot. *Id.*

Plaintiff fully elucidates his arguments with respect to these textual issues in his MTCA Opp'n. ECF No. 26, at 7-11, 21-29.  He contends he should prevail on those bases alone.  Therefore, he will not review them here.  However, absent a ruling based solely on one of these bases, there are multiple factual issues that are in dispute that should be subject to limited discovery.

In summary, therefore, the Court can (and Plaintiff contends it should) rule in Plaintiff's favor without discovery.  As such, Plaintiff presents the arguments in the instant motion, and the Court need look further in this memorandum of law, only if the Court determines there are unresolved questions of fact, the resolution of which would impact its decision on Defendant's MTCA.  To the extent these pertinent questions of fact exist, Plaintiff requires limited discovery into the

5

existence, formation, and enforceability of the purported arbitration agreement at issue in this case.  This discovery would be necessary to properly respond to Defendant's MTCA, and to meet Plaintiff's burden on a motion for summary judgment on his related declaratory judgment claim.[2]

### B.  Standard for Early Discovery

Before parties have conferred pursuant to Fed. R. Civ. P. 26(f), "a party may not seek discovery from any source … except … by court order."  Fed. R. Civ. P. 26(d)(1). "A party seeking expedited discovery must show good cause." *PowderPak Int'l, LLC v. B.F. Mach., Ltd,* No. 4:16-CV-0026-HLM, 2016 WL 9450407, at *2 (N.D. Ga. Mar. 1, 2016).  Here, Plaintiffs show good cause.  A court's review of a motion to compel arbitration is made "under the standard for summary judgment."[3]

---

[2]  In his First Amended Complaint, Plaintiffs seeks a declaratory judgment on questions of arbitrability. ECF No. 13, ¶¶ 80-117, 132-138. This is expressly authorized by the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, which allows federal courts to adjudicate rights and other legal relations where such adjudication would serve a useful purpose.  *See* 6A Moore's Federal Practice (2d Ed. 1991) ¶ 57.02[5] at 57-13. Plaintiff has not yet moved for a declaratory judgment. Rather, Plaintiff would seek summary judgment on the declaratory judgment component of his action once he has completed discovery on arbitrability. *See, e.g., Light of the World Gospel Ministries, Inc. v. Vill. of Walthill, Nebraska,* 336 F.R.D. 567, 573 (D. Neb. 2020) (summary judgment on declaratory judgment claim deferred under Fed. R. Civ. P. 56(d) where the opposing party did not have adequate opportunity to conduct discovery).

[3] Though courts describe the standard of review on a motion to compel arbitration as "summary judgment-like," *see, e.g., Bazemore v. Jefferson Capital*

*Bazemore v. Jefferson Cap. Sys., LLC*, No. CV 314-115, 2015 WL 2220057, at \*3 (S.D. Ga. May 11, 2015), aff'd on other grounds, 827 F.3d 1325 (11th Cir. 2016) (citing *Johnson v. KeyBank Nat'l Assoc.*, 754 F.3d 1290, 1294 (11th Cir.2014)).  Under this standard, if there are genuine issues of material fact concerning arbitrability impacting the Court's decision on Defendant's MTCA and Plaintiff's declaratory judgment claim, *see Reed*, 2020 WL 5659436, \*7, the Court should permit Plaintiff to take expedited limited discovery.

### C. Discovery on Arbitrability

The Federal Arbitration Act ("FAA") expressly authorizes discovery into "'the making of the arbitration agreement of the failure, neglect or refusal to perform the same be in issue '" *Id.* (quoting 9 U.S.C. § 4).  Therefore, courts have permitted limited discovery into arbitration agreement formation, *see, e.g., Reed,* 2020 WL 5659436, \*7, and unconscionability, *see, e.g., Jackson v. Am. Gen. Fin. Servs., Inc.*, No. CIVA 706-CV-76 HL, 2007 WL 1231671, at \*4 (M.D. Ga. Apr. 26, 2007). Plaintiff would seek discovery on both grounds, as well as on the issue of waiver.

Plaintiff discusses his need for discovery on each issue, *seriatim*.

---

*Systems, LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016), Plaintiff finds no authority suggesting a motion to take limited early discovery on arbitrability would be made pursuant to Fed. R. Civ. P. 56(d).  If the Court determines this motion must be made under Rule 56(d), Plaintiff would request leave to submit the required supporting declaration.

**1. ADRPA and APM "at the time a request for … arbitration was initiated."**

In his opposition brief, Plaintiff argues that Defendant failed to provide proof of the governing contract. *See generally* MTCA Opp'n, ECF No. 26, at 7-11. The ADRPA provides that "SCAD retains the right to modify or terminate this ADRPA and the Arbitration Procedures on thirty days' written notice. The policy in effect *at the time a request for mediation and/or arbitration is initiated* will govern the process by which the Dispute is resolved." MTCA Opp'n, Ex. A, ECF No. 26-1, at ¶ 14. Defendant demanded Plaintiff submit his claims to arbitration in 2020, but only provided the Plaintiff and the Court with the version of the ADRPA in the 2015-2016 SCAD Staff Handbook, along with a version of the APM copyrighted June 2012. MTCA Opp'n, ECF No. 26, at 5-6 & 10, n.6. Plaintiff also notes that Defendant did not follow the procedures mandated in the Staff Handbook to provide 30 days' written notice of modifications to the ADRPA. *Id.* at 10.

In its Reply, Defendant acknowledges the ADRPA was revised in 2020, but flips the script and contends that its failure to provide the 30 days' written notice means Plaintiff's dispute would be governed by the ADRPA in the 2015-2016 Staff Handbook. In essence, Defendant construes the ambiguity of the notice requirement (To whom must notice be provided? What policy is "in effect" if no

notice is given?) against the non-preparer, rather than against the preparer (Defendant) as black-letter contract law requires. *See First Acceptance Ins. Co. of Georgia, Inc. v. Hughes*, 305 Ga. 489, 496, 826 S.E.2d 71, 77 (2019) (quoting O.C.G.A. § 13-2-2(5).

Therefore, the Court could simply find that Defendant did not meet its burden to prove the existence of the governing contract. However, if the Court finds the 2020 ADRPA would be the governing document, Plaintiff is entitled to discovery. Unresolved factual questions include (1) the content of the 2020 ADRPA; (2) the content and mechanics of any notice given; and (3) to whom notice was given.

### 2. Defendant's actions in previous arbitrations.[4]

#### a. Cost shifting

With respect to cost shifting, Defendant attacks former Director of Giving Derrell Holcomb as bringing a "meritless" case, MTCA Reply, ECF No. 28, at 14, rather than addressing Defendant's counsel's behavior during the deposition.[5]

---

[4] As noted in Plaintiff's MTCA Opp'n, if Defendant failed to meet its burden of showing the formation of the operative contract, the Court should go no further and deny Defendant's MTCA.

[5] In his declaration, Mr. Holcomb makes it clear that he believed his case had merit—and by his description, it likely did—but only withdrew from the arbitration because of the threat of cost shifting; a risk he was not willing to take

Mr. Holcomb did not invent the terms "bully[ing] and intimidate[ing]" to describe the deposition.  Rather, they were his counsel's words during the deposition itself as she protested Defendant's antics.  Holcomb Decl. Ex. H-1, ECF No. 26-10, at 165:14-166:18. Further, Defendant contends Mr. Holcomb's attorney did not instruct him not to answer the questions, but glosses over what actually happened in the deposition: Mr. Holcomb's attorney objected, correctly characterizing the questioning as "bullying" and designed "to intimidate" him, but she allowed Mr. Holcomb to answer when Defendant's counsel indicated raising the dispute with the arbitrator itself would increase the amount of money Mr. Holcomb would have to pay the arbitrator if his case were not successful.  *Id.* at 165:14-166:18 ("It is intimidation; that's what you're doing, but you can do it. Go ahead.")

Defendant's posture on cost shifting in other arbitrations bears directly on Plaintiff's claim that the cost shifting provision here is substantively unconscionable.  Defendant argues that the "mere possibility that [Plaintiff] could be saddled with prohibitive costs is too speculative to justify the invalidation of [an arbitration agreement]."  MTCA at 18 (quoting *Musnick v. King Motor Co.*, 325 F.3d 1255, 1259 (11th Cir. 2003).  Plaintiff, in his MTCA Opposition provides both

_____

on.  March 24, 2021 Decl. of Darnell Holcomb ("Holcomb Decl."), ECF No. 26-9, at ¶¶ 4, 9-14.

expert testimony regarding the costs of arbitration and his own declaration detailing his income and expenses. However, other than spuriously suggesting that Plaintiff's claim of financial hardship is too speculative because Plaintiff did not submit a statement of a "qualified financial advisor … as to whether these projected costs … are sufficiently high to preclude Plaintiff from effectively vindicating his § 1981 rights in arbitration,"[6] MTCA Reply at 13-14, Defendant's suggestion that cost shifting is speculative because it would only happen if Plaintiff does not prevail makes Defendant's actions *during* arbitration directly relevant. In other words, if Defendant routinely weaponizes cost shifting over the course of an arbitration to intimidate an employee—as it did in Mr. Holcomb's case—the impact does not wait until the outcome of the arbitration. Rather, it is intentionally emphasized by Defendant and certainly impactful on the employee's willingness to seek vindication of his or her rights (and far from speculative), throughout the arbitration process.

---

[6] A financial advisor is not necessary to do basic arithmetic. According to Professor Szalai's declaration, an arbitration would cost $48,000 or more. March 25, 2021 Decl. of Imre S. Szalai, ECF No. 26-11, at ¶¶ 17, 23. Plaintiff's declaration reflects family income of $8,641 per month and expenses of $7,740 per month. March 25, 2021 Decl. of Isaac Payne ("Payne Decl. I"), ECF No. 26-2, at ¶¶ 46-50. With this $901 per month surplus, assuming no unforeseen expenses, it would take Plaintiff 53 months –almost 4 ½ years—to pay for $48,000 in arbitration costs. This is based on sworn testimony; not speculation.

Discovery, therefore, into Defendants' use of these antics in prior arbitrations is relevant to Plaintiff's claim, both in his opposition to the MTCA and in his forthcoming declaratory judgment motion, that the cost shifting is substantively unconscionable.  As such, the Court should allow this discovery.

### b.    Selection of the arbitrator

Defendant suggests, despite the plain language of the ADRPA and the APM, that it uses a cross-section of arbitrators beyond retired federal judges. MTCA, ECF No. 20-1, at 15-16 & n.9; MTCA Reply, ECF No 28, at 17 (referencing MTCA at 15-16 Because arbitrations are confidential under Defendant's own ADRPA, Defendant has the distinct advantage of holding all of the cards and showing none. Plaintiff should be allowed to discovery regarding previous arbitrations to determine if Defendant has allowed former employees to draw on a more diverse pool of arbitrators.[7]

---

[7] Plaintiff would agree to a reasonable protective order maintaining the confidentiality of certain information in the arbitrations.

**c.    Allowance for subpoena of non-party witnesses.**

Defendant contends its own ADRPA supersedes the Eleventh Circuit

holding in *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d

1145 (11th Cir. 2019) that pre-hearing discovery in arbitration from non-parties is

prohibited.   MTCA Reply at 12, n.13.   However, Defendant has not indicated

whether it has used *Managed Care* as a shield against third-party discovery in prior

arbitrations, or if it has permitted third-party discovery.   Plaintiff is entitled to

discovery on this question.

### 2. Circumstances surrounding Plaintiff's alleged signing the 2015 Staff Handbook Acknowledgment and the click-through arbitration provisions while Plaintiff was a student at SCAD.

In its reply, Defendant gives short shrift to Plaintiff's procedural

unconscionability argument involving his alleged signing of the 2015 Staff

Handbook Acknowledgment (the "Acknowledgment").   In short, Plaintiff was

rushed, in a smoke and mirrors new hire orientation, through the signing of pre-

employment documents, among which was the Acknowledgment. MTCA Opp'n,

ECF No. 26, at 2-3; Payne Decl. I, ECF No. 26-2, at ¶¶ 12-22. Then, once signed,

Defendant took the signed Acknowledgment from Plaintiff, which appears to have

been the only roadmap to finding the ADRPA on SCAD's intranet. *Id.* at ¶¶ 20-22.

At a minimum, there is a factual dispute, and Plaintiff is entitled to discovery

regarding, the agenda and process for the new hire orientation and any documents Plaintiff may have received *and been allowed to retain* indicating where he could locate the ADRPA SCAD contends bound him.

Defendant also raises, for the first time, the claim that Plaintiff "had agreed to, and been bound by, a virtually identical ADRPA as a SCAD student" and refers to a printout of an apparent click-through acknowledgment from when Plaintiff was a student.  MTCA Reply, ECF No. 28, at 3. Plaintiff has no memory whatsoever of acknowledging or ever seeing an ADRPA while he was a student and certainly casts doubt on the circumstances around the click-through process.  (May 9, 2021 Decl. of Isaac Payne ("Payne Decl. II") at ¶¶ 3-6); *cf. Reed*, 2020 WL 5659436, *5-6 (allowing discovery into the authenticity of an electronic signature). Notably, while Defendant puts the alleged student ADRPA at issue by claiming it was "virtually identical" to the employee ADRPA, Defendant does not provide the Court with the document itself.  Because Defendant is now arguing that Plaintiff's alleged acknowledgment of the student ADRPA is evidence of his knowledge of the staff ADPRA, Plaintiff should get discovery regarding the student alleged ADPRA and the click-through process.

### 3.  The Noah Pescitelli Confidentiality Agreement and agreements with other former Fishing Team athletes.

In its Reply, Defendant misrepresents information regarding the circumstances surrounding the termination of former Fishing Team student athlete Noah Pescitelli's athletic scholarship and appears to leave open the question of whether other former student athletes on the Fishing Teams signed confidentiality agreements.  Because of these questions of fact, Plaintiff is entitled to discovery to resolve them.

In his Declaration in support of Defendant's Reply, SCAD Senior Vice President for Admission and Student Success Dr. Phil Alletto indicates that Mr. Pescitelli "forfeited his athletic scholarship in Spring 2019 when he walked away from the Fishing Teams." Apr. 23, 2021 Decl. of Phil Alletto ("Alletto Decl."), ECF No, 28-1, at ¶ 10. This is false. Mr. Pescitelli continued to receive his athletic scholarship for at least one academic quarter after he left the team.  (Payne Decl. II at ¶ 7).  Though fundamentally Dr. Alletto's declaration does not controvert Plaintiff's contention that SCAD offered Mr. Pescitelli a continuation of his athletic scholarship in exchange for a settlement that included a confidentiality agreement, the circumstances of the settlement negotiations, including the nature of Mr.

Pescitelli's claims and whether they involved similar allegations to those Plaintiff makes in the instant litigation, are subject to further exploration in discovery.

Defendant also artfully contends in a footnote that "there is no evidence that [Mr. Pescitelli] or any other potential witness ever signed a confidentiality agreement with SCAD." MTCA Reply, ECF No. 28, at 21 n. 12.  In this, Defendant is correct.  Plaintiff has no evidence that any such agreements were signed because a confidentiality agreement solely would be in SCAD's and the student's possession and, stating the obvious, it would be confidential.  However, Plaintiff does now have an admission in Dr. Alletto's declaration that Defendant offered Mr. Pescitelli a continuation of his athletic scholarship in exchange for a settlement agreement that included a confidentiality provision.  Further, because a motion to compel arbitration is reviewed under the standard for summary judgment, the Court should not rely upon Dr. Alletto's self-serving declaration, which contains one known falsity.  *See, e.g., Sears v. Roberts, 922 F.3d 1199, 1209* (11th Cir. 2019) (at summary judgment, court should weigh conflicting evidence in favor of the non-movant).  At the very least, Plaintiff should be allowed limited discovery into any agreements the former Fishing Team members may have signed that would impact their voluntary cooperation with proceedings in arbitration. Further, as

noted above, the student ADRPA, which Defendant did not include with its reply, itself may limit their cooperation and therefore should be discoverable.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff asks the Court to grant Plaintiff's motion and, to the extend questions of fact exist impacting the Court's decision on Defendant's MTCA, permit early discovery on issues of arbitrability.

Respectfully submitted this 10th day of May, 2021.

/s/ Daniel Werner
Daniel Werner
Georgia Bar No. 422070
dan@decaturlegal.com
James Radford
Georgia Bar No. 108007
james@decaturlegal.com
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300

Attorneys for Plaintiff

17

## CERTIFICATE OF SERVICE AND FONT

This is to certify that on May 10, 2021, I prepared the foregoing

Memorandum of Law in Support of Motion to Take Limited Discovery on the

Issue of Arbitrability in Book Antiqua, 13-point type in accordance with L.R.

5.1(C), and that I electronically filed the document with the Clerk of Court using

the CM/ECF system, which sent notification of such filing to all counsel of

record.

/s/ Daniel Werner
Daniel Werner
Attorney for Plaintiff