IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Isaac Payne, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| v. | ) | 1:20-cv-05000-JPB-JCF |
| | ) | |
| The Savannah College of Art and Design, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**Plaintiff's Memorandum of Law in Opposition to
Defendant's Refiled Motion to Dismiss and to Compel Arbitration**

Table of Contents

Table of Authorities…………………………………………………………..  *iv*

I.      PROCEDURAL DEFICIENCY……...…………………………………… 1

II.     STATEMENT OF FACTS…………………………………………… 3

   A. Plaintiff's Discrimination Claim……………………………………  3

   B.  Arbitrability…………………………………………………………..  4

   C.  SCAD's Witnesses Interference…………………………………  7

III.    ARGUMENT…………………………………………………………… 8

   A. Defendant Fails to Provide Proof of Formation of the Governing
   Contract………………………………………………………………  8

   B.  The Court Has Authority to Determine Arbitrability in the
   Absence of Clear and Unmistakable Language Delegating that
   Authority……………………………………………………………  12

   C. The ADRPA and APM are Indefinite and Unconscionable as a
   Matter of Law and Therefore are Unenforceable…………………………  15

      1.  Indefiniteness……………………………...…………………………....  17

      2.  Procedural Unconscionability…………………………………….... 20

      3.  Substantive Unconscionability………………………………………  21

         a.  Costs of Arbitration……………………………………….......  21

         b.  Lack of Mutuality…………………………………….......  25

         c.  Selection of the Arbitrator………………………………....  28

d.  Confidentiality……………………………………………….... 29

D. Indefinite and Unconscionable Terms of the ADRPA and APM Cannot Be Severed………………………………………………….... 30

E.  Defendant Has Waived Any Right It Arguably Had to Arbitration Through Its Conduct…………………………………………………… 32

F.  The Court Should Not Grant Defendant's Motion Without First Allowing Limited Discovery on Arbitrability…………………………... 35

G. Sanctions Are Not Warranted……………………………………….35

IV.    CONCLUSION……………………………………………………… 35

Table of Authorities

*Cases*

*Aldridge v. Travelers Home & Marine Ins. Co.*, No. 1:16-CV-01247-SCJ,
2019 WL 8439150 (N.D. Ga. Feb. 21, 2019) ......................................................... 2

*AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) ..................................... 17 n.12

*Aukerman v. Witmer*, 256 Ga. App. 211 (2002) ...................................................... 16

*Batson v. Kentucky*, 476 U.S. 79 (1986). ................................................................. 29

*Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (2016) ....................... 9

*Bess v. Check Express,* 294 F.3d 1298 (11th Cir. 2002). .......................................... 16

*Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2021 WL 1061794
(N.D. Ga. Mar. 19, 2021) .......................................................................................... 2

*Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405
(5th Cir. 1971). .......................................................................................................... 32

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) ................... 25, 30

*Cannon v. South Atlanta Collision Center, LLC*,
No. 1:11-CV-1030-TWT-ECS, 2012 WL 1004914 (N.D. Ga. Feb. 27, 2012) ....... 31

*Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301 (N.D. Ga. 2012) ................................ 28 n.14

*Cordoba v. Dillards, Inc.*, 419 F.3d 1169 (11th Cir. 2005) ...................................... 23

*Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) .......................................... 16-17, 21

*Davis v. Oasis Legal Finance Operating Co., LLC*, 936 F.3d 1174
(11th Cir. 2019) ......................................................................................................... 28

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652,
134 L.Ed.2d 902 (1996) ............................................................................................ 16

*Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279 (11th Cir. 2015) ...... 22

*Epps v. Rockmo Entm't, LLC*, 849 S.E.2d 510 (Ga. Ct. App. 2020),
*reconsideration denied* (Nov. 17, 2020) .................................................................... 32

*First Acceptance Ins. Co. of Georgia, Inc. v. Hughes*, 305 Ga. 489,
826 S.E.2d 71 (2019)................................................................................ 10, 13, 15

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)................................. 11

*First-Citizens Bank & Tr. Co. v. SJ Pharms., LLC*, No. 1:16-CV-00706-ELR,
2016 WL 9383313 (N.D. Ga. Dec. 21, 2016)) ........................................................ 11

*Flanders v. State*, 279 Ga. 35 (2005) .......................................................... 29

*Gordon v. Branch Banking & Tr.*, 419 F. App'x 920 (11th Cir.),
*cert. granted, judgment vacated*, 565 U.S. 1031, 132 S. Ct. 577,
181 L. Ed. 2d 418 (2011).................................................................. 17 n.11

*Greenberg v. Gen. Mills Fun Grp.*, 478 F.2d 254, 256 (5th Cir. 1973) .................. 11

*In re Checking Account Overdraft Litig. MDL No. 2036*, 672 F.3d 1224
(11th Cir. 2012) ..................................................................................... 21

*Johnson v. Wells Fargo Bank, N.A.*, 2015 WL 12591792
(N.D. Ga. June 17, 2015) .......................................................................... 21

*Kemira, Inc. v. Williams Investigative & Sec. Servs., Inc.*, 215 Ga. App. 194,
450 S.E.2d 427, (1994) .............................................................................. 25

*Kitchen v. Insuramerica Corp.*, 296 Ga. App. 739 (2009)  ..................................... 16

*Langfitt v. Jackson*, 284 Ga. App. 628 (2007) ........................................................ 32

*Lynn v. Lowndes Cty. Health Servs., LLC*, 354 Ga. App. 242,
840 S.E.2d 623 (2020), *cert denied* (Sept. 8, 2020) ................................................. 9

*Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.,*
939 F.3d 1145 (11th Cir. 2019) ............................................................... 33

*Mason v. Midland Funding LLC*, 815 F. App'x 320 (11th Cir. May 13, 2020) .... 9

*Matthews v. Ultimate Sports Bar, LLC*, No. 1:13-CV-2353-TWT,
2016 WL 4035655 (N.D. Ga. July 28, 2016) ......................................... 16-17, 30-31

*Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27 (1998) .................................. 17 n.11, 20

*NEC Techs., Inc. v. Nelson,* 267 Ga. 390, 478 S.E.2d 769 (1996) ........................... 16

*Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 206-07 (3d Cir. 2010) .................... 31

*Panhandle Fire Prot., Inc. v. Batson Cook Co.*, 288 Ga. App. 194,
653 S.E.2d 802 (2007) ........................................................................... 12, 15

*Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280 (11th Cir. 2001,
*subsequently vacated on procedural grounds*, 294 F.3d 1275 (11th Cir. 2002)**.......** 31-32

*Reed v. Eastside Med. Ctr., LLC*, No. 1:19-CV-03967-SDG, 2020 WL 5659436
(N.D. Ga. Sept. 23, 2020) ...................................................................... 9, 12, 33, 35

*Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.,*
No. 2:05-CV-01318-BESGWF, 2006 WL 1582122 (D. Nev. June 5, 2006).......... 34

*Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357 (N.D. Ga.),
*aff'd sub nom. Reagan v. Stored Value Cards, Inc.*, 608 F. App'x 895
(11th Cir. 2015) ..................................................................................... 8

*United Health Servs. of Georgia, Inc. v. Alexander*, 342 Ga. App. 1,
802 S.E.2d 314 (2017)............................................................................ 8-9

*S. Tr. Ins. Co. v. Guidewire Software, Inc.*, No. 5:20-CV-00327-TES,
2020 WL 6879259, at *3 (M.D. Ga. Nov. 23, 2020) ............................... 14, 15 n.10

*WellStar Health Sys., Inc. v. Kemp*, 324 Ga. App. 629,
751 S.E.2d 445 (2013)............................................................................ 34

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279
(11th Cir. 2018) ................................................................ 3 n.2

## Statutes, Rules, and Other Authority

Fed. R. Civ. P. 11(c)(2) ............................................................. 35

Fed. R. Civ. P. 11(b) ................................................................ 35

O.C.G.A. §13-2-2(5) ................................................................ 10

Restatement, 2nd, Contracts, §2(1)) ....................................... 26

U.C.C. §2–302 cmt. 1 ............................................................... 16

There are multiple national entities that have developed employment arbitration rules, and those rules have been tested and, for the most part, upheld over the years in courts around the country. However, rather than adopt standard rules of employment arbitration, The Savannah College of Art and Design ("SCAD" or "Defendant") has opted to try to reinvent employment arbitration in its zeal to dissuade employees from bringing claims at all and to sweep under the rug any claims employees may have. SCAD has created its own complex and convoluted rules and procedures while only haphazardly implementing them at SCAD's own peril. As set forth herein, by failing to meet its burden even to show the existence of an applicable agreement to arbitrate, by affirmatively acting to undermine its own rules, and by relying on arbitration rules and procedures that are unconscionable, SCAD's motion to compel arbitration must fail. Further, SCAD's Refiled Motion to Dismiss and to Compel Arbitration ("Refiled MTCA"), ECF No. 35, is procedurally deficient and should be denied on that basis.

## I.   **PROCEDURAL DEFICIENCY**

As a preliminary matter, Mr. Payne takes issue with manner SCAD has submitted its Refiled MTCA. ECF No. 35. Rather than brief the Refiled MTCA, SCAD "refiles, adopts, and incorporates by reference its Renewed Motion to Dismiss and to Compel Arbitration…, Brief in Support…, Reply Brief in Support…, and Declaration of Phil Alletto…." *Id.* at 1. SCAD then replaces its earlier-filed Declaration of Jonathan Goldstein, ECF No. 20-1 at 29, with another declaration of Mr. Goldstein. ECF 35-1.

By incorporating its prior submissions by reference, the Court and Mr. Payne are "left to guess as to which arguments or sections of the respective brief[s]" SCAD refers. *Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2021 WL 1061794, at *1 (N.D. Ga. Mar. 19, 2021) (Boulee, J.). For example, SCAD's incorporated brief in support of its February 26, 2021 Renewed Motion to Dismiss and to Compel Arbitration ("Renewed MTCA Br."), ECF No. 20-1, references the initial Goldstein Declaration, though SCAD has replaced that declaration with the Second Goldstein Declaration in its newly Refiled MTCA. Further, by incorporating its 25-page Renewed MTCA and its 23-page reply, in addition to its new arguments, Mr. Payne must now respond to over 48 pages of briefing in his opposition. This Court has previously denied motions to dismiss where combined incorporated briefing exceeds the page limits. See, e.g., *Biedermann*, 2021 WL 1061794, *1-2; *Aldridge v. Travelers Home & Marine Ins. Co.*, No. 1:16-CV-01247-SCJ, 2019 WL 8439150, at *1 (N.D. Ga. Feb. 21, 2019).[1]

Mr. Payne therefore requests that the Court deny SCAD's Refiled MTCA on the basis of this procedural deficiency.

---

[1] Mr. Payne's counsel raised this concern with SCAD's counsel and requested that SCAD withdraw the Refiled MTCA and resubmit it with the appropriate briefing and evidence. SCAD's counsel declined to do so, but agreed not to oppose a Motion to Exceed Page Limits. July 20, 2021 Decl. of Daniel Werner ("Werner Decl."), ¶ 3 & Ex. DW-3 (email thread). Mr. Payne raised similar concerns in its Motion. ECF No. 36 & July 15, 2021 Minute Entry (motion granted). As Mr. Payne has subsequently drafted the instant opposition brief, sifting through the incorporated submissions and responding to 48 pages of briefing in 35 pages has been a significant challenge.

## II.  STATEMENT OF FACTS

### A. Mr. Payne's Discrimination Claim.

As described in the First Amended Complaint ("FAC"), ECF No. 13, Isaac Payne ("Mr. Payne" or "Plaintiff"), a Black man, a former United States Marine and combat veteran, and a *magna cum laude* SCAD graduate, was a highly successful and commended Head Coach of SCAD's Men's and Women's Fishing Teams. FAC ¶23; July 20, 2021 Decl. of Isaac Payne ("Payne Decl.") ¶¶2-11 & Exs. IP-1, 2 & 4. Nonetheless, Mr. Payne faced pervasive race-based abuse and harassment from some of his student-athletes. FAC ¶25-30, 41, 47-48. Mr. Payne reported the racialized harassment to SCAD leadership repeatedly, beginning in February 2017. *Id.*¶32. SCAD took no remedial action. *Id.* ¶35. In February 2018, Mr. Payne again raised the hostile work environment he faced to SCAD leadership. *Id.*¶61. Five days later, SCAD fired Mr. Payne and later hired a white man to replace him. *Id.* ¶63-68.[2]

---

[2] The earlier Renewed MTCA Br., ECF No. 20-1, lists five incidents for which SCAD claims Mr. Payne was fired, but SCAD has not incorporated the declaration it references in support of these allegations. Further, as they are based on alleged complaints from unnamed sources but are presented for the truth of the matters asserted, they are inadmissible hearsay. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1291 n.8 (11th Cir. 2018). As such, because the allegations are not supported by any incorporated testimony, they should be stricken or disregarded. However, the evidentiary shortcomings aside, each alleged incident either is a complete fabrication, grossly exaggerated or, when viewed in the actual context of the alleged incident, was entirely within the proper scope of an athletic coach's decision-making authority. Payne Decl. ¶ 30.

## B. Arbitrability

At a mandatory new hire orientation on Mr. Payne's first day of work, SCAD staff rushed Mr. Payne through the signing of employment-related documents. Payne Decl. ¶¶12-13, 16. Among the documents was a Staff Handbook Acknowledgment ("the Acknowledgment"). *Id.* ¶14-15 & Ex, IP-3. Though the Acknowledgment had vague instructions to locate the 2015-2016 Staff Handbook, which contained SCAD's Alternative Dispute Resolution Policy and Agreement ("ADRPA"), on SCAD's intranet, SCAD took the Acknowledgment from Mr. Payne after he signed it, and never provided him with a paper copy of the Staff Handbook while he was employed at SCAD. *Id.* ¶21, 23.

The 2015-2016 Staff Handbook itself is 64 pages long, and the ADRPA makes up one of 142 entries. FAC ¶92-94. The text of the ADRPA is not bolded or otherwise highlighted to distinguish it from the other policies in the handbook.[3] *Id.* ¶95. The

---

[3] The ADRPA itself also has no subject headings or section numbers. To aid the Court, Plaintiff has broken down the relevant related subjects of the ADRPA, the APM, and, where applicable, the federal rule or procedure, into a chart attached as **Ex. A**. For ease of citation, Plaintiff has given each subject on the chart a number. **Plaintiff references the chart herein as the "ADRPA/APM Chart" followed by the subject number**.

As the Court will see upon reviewing SCAD's motion papers, the absence of any headings distinguishing the various parts of the ADRPA makes guiding the Court to a specific provision of the ADRPA particularly challenging. If this is difficult for counsel and the Court, and in fact required Plaintiff's counsel to create a separate table, it presumably is all the more so for a layperson trying to ascertain his purported rights and responsibilities under ADRPA.

clauses in the ADRPA purportedly delegating questions of arbitrability do not delegate sole authority to the arbitrator. *Id.*¶100; ADRPA/APM Chart §8. The ADRPA contains nonmutual provisions, enabling SCAD and not the employee to select the venue, *Id.* §5, outlining a procedure for SCAD employees to raise claims in arbitration but enabling only SCAD to bypass these procedural steps and their related deadlines, *Id.* §§1-3, and affording the opportunity to seek relief in court for the types of claims likely to be raised only by SCAD. *Id.* 8; FAC ¶101-06. The ADRPA requires that the arbitrator be a retired federal judge, unless one is not available, ADRPA/APM Chart ¶4, skewing the racial demographics of the factfinder away from demographics of the region. FAC ¶107. The ADRPA imposes prohibitive costs on Mr. Payne, as the non-prevailing party must pay the arbitrator's fees, ADRPA/APM Chart §7, FAC ¶108, and SCAD aggressively uses the cost-shifting to intimidate claimants in the arbitration process. *See* March 24, 2021 Decl. of Darnell Holcomb ("Holcomb Decl.") ¶¶9-14 & Ex. H-1. Further, the ADRPA invokes multiple and inconsistent procedural rules, *see, e.g.* ADRPA/APM Chart §9-11 and n.1, including its own APM which itself invokes and contradicts other rules. *Generally* ADRPA/APM Chart. This makes attempting to follow the rules a game of connect-the-dots across multiple sets of rules, some of which contradict each other. *Id.*; FAC ¶112.

On August 6, 2020, Mr. Payne, through counsel, sent a letter to SCAD leadership raising Mr. Payne's claims of discrimination. Payne Decl. ¶41, Ex. IP-6. In response,

SCAD's counsel sent Mr. Payne's attorney emails insisting Mr. Payne's dispute must be subject to arbitration and attached the Acknowledgment and the APM. SCAD acknowledges that its counsel's August 21, 2020 email constituted the operative request to arbitrate. Refiled MTCA at 1-2.[4]

The ADRPA contained in the 2015-2016 Staff handbook concludes with the following paragraph:

> SCAD retains the right to modify or terminate this ADRPA and the Arbitration Procedures on thirty days' written notice. The policy, if any, *in effect at the time a request for mediation and/or arbitration is initiated*, will govern the process by which the Dispute is resolved.

ADRPA/APM Chart ¶14 (emphasis added). SCAD acknowledges (1) it never sent Mr. Payne a written notice of any modification or termination of the ADRPA; (2) the event triggering this policy was SCAD's counsel's August 21, 2020 email demanding arbitration; and (3) "the ADRPA that was in the Staff Handbook 2015-2016 was revised earlier in 2020." July 2, 2021 Decl. of J. Goldstein ("7/2021 Goldstein Decl."), ¶5. Further, as discussed below, though SCAD suggests in its Refiled MTCA Brief that the 2015-2016 ADRPA remained "in effect as to him in August 2020," Refiled MTCA at 2,

---

[4] Notably, the APM only sets forth what SCAD claims should be the governing procedures for arbitration, but no language that could be construed as an agreement to arbitrate. Only eight months later, after Mr. Payne's counsel asked SCAD's counsel whether SCAD contended the APM constituted an agreement to arbitrate did SCAD's counsel provide the 2015-2016 Staff Handbook, which contains the ADRPA. Werner Decl. ¶ 3, Ex. DW-2.

Jonathan Goldstein, SCAD's Executive Director of Human Resources, states the opposite in his declaration in support of the Refiled MTCA: "although the ADRPA that was in the Staff Handbook 2015-2016 was revised earlier in 2020, this modification *did apply* to Mr. Payne because SCAD did not provide written notice of it to former employees." 7/2021 Goldstein Decl. ¶5 (emphasis added).

### C. SCAD's Witness Interference.

SCAD has required at least one former member of the Fishing Teams to sign a confidentiality agreement to continue receiving a substantial athletic scholarship, which would effectively prevent Mr. Payne from getting their voluntary cooperation before an arbitration hearing. This raises questions about how SCAD effectively may have bought the silence of some of the very people Mr. Payne would need to cooperate with his proceedings. FAC ¶116-17.

The academic year after SCAD terminated Mr. Payne, SCAD disbanded the Fishing Teams. FAC ¶69. Noah Pescitelli, a member of the team who received an athletic scholarship, had lodged complaints with SCAD leadership raising concerns about some of the same issues Mr. Payne had sought the SCAD leadership's help in resolving. Payne Decl. ¶35. When Mr. Pescitelli left the Fishing Team due to intolerable conditions, representatives of SCAD asked him to sign a "Confidential Settlement Agreement" by which he would release SCAD from any claims and agree to a strict confidentiality provision prohibiting disclosure of, among other things, "the facts and

circumstances concerning this Agreement." *Id.* ¶37, Ex. IP-5. In exchange for signing the Agreement, Mr. Pescitelli would continue to receive his athletic scholarship of $36,630 for the following academic year. *Id.* SCAD acknowledges it made this offer to Mr. Pescitelli. Apr. 23, 2021 Decl. of Phil Alletto ¶11, ECF No. 28-1. Mr. Pescitelli refused to sign the Agreement. As a consequence, he lost his scholarship. *Id.* ¶12

## III. ARGUMENT

The ADRPA should not be enforced because SCAD did not meet its burden of showing formation of a governing contract, its terms are indeterminate and unconscionable, those terms cannot be severed, and SCAD has waived any entitlement to arbitration through its conduct. Consequently, SCAD's motion should fail.

### A. SCAD Fails to Provide Proof of Formation of the Governing Contract.

Though the Court asked SCAD to do so, Order and Report and Recommendation ("R&R"), ECF No. 33, SCAD still has not met its burden to show the formation of an agreement to arbitrate applicable in 2020, the time SCAD first demanded Mr. Payne submit his dispute to arbitration. As such, SCAD's motion is without merit.

Courts asked to compel arbitration should first consider "any formation challenge to the contract containing the arbitration clause," *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1359 (N.D. Ga.), *aff'd sub nom. Reagan v. Stored Value Cards, Inc.*, 608 F. App'x 895 (11th Cir. 2015), which is a question of ordinary state contract law, *United Health Servs. of Georgia, Inc. v. Alexander*, 342 Ga. App. 1, 6, 802 S.E.2d 314, 319

(2017). The party seeking arbitration must prove "the existence of a valid and enforceable agreement to arbitration," *Lynn v. Lowndes Cty. Health Servs., LLC*, 354 Ga. App. 242, 243, 840 S.E.2d 623, 627 (2020)*, cert denied* (Sept. 8, 2020); *cf. Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1330 (2016) (a party denying the existence of an arbitration agreement does not have to "deny its existence 'unequivocally' and substantiate that denial with proof"); *Mason v. Midland Funding LLC*, 815 F. App'x 320, 328 (11th Cir. May 13, 2020) (where defendant failed to produce competent evidence of actual arbitration agreement, affirming denial of motion to compel arbitration). Where "no valid and enforceable agreement to arbitrate was formed, the federal policy in favor of arbitration does not control." *United Health Servs.*, 802 S.E.2d at 319. "This standard 'make[s] logical sense: How could a court enforce an arbitration clause contained in a contract that may never have been formed in the first place?'" *Reed v. Eastside Med. Ctr., LLC*, No. 1:19-CV-03967-SDG, 2020 WL 5659436, at *4 (N.D. Ga. Sept. 23, 2020) (internal citation omitted).

Here, SCAD's position stated in its Refiled MTCA does not match its evidence. Though SCAD contends the 2015-2016 ADRPA was "in effect" in August 2020, Mr. Goldstein declares, "although the ADRPA that was in the Staff Handbook 2015-2016 was revised earlier in 2020, this modification *did apply* to Mr. Payne because SCAD did not provide written notice of it to former employees." 7/2021 Goldstein Decl. ¶5

(emphasis added).[5] SCAD has not provided the Court with the 2020 ADRPA, which Mr. Goldstein contends applies to this dispute. Therefore, though given the opportunity, SCAD still "has not proven all of the terms of that agreement." R&R at 15.

Even without Mr. Goldstein's contradictory declaration, the language in the ADRPA governing which version of the ADRPA is "in effect at the time a request for mediation and/or arbitration is initiated" is, at best, ambiguous. SCAD asks the Court to construe this ambiguity in favor of SCAD, the drafter, and against Mr. Payne. This is the opposite of what Georgia contract law requires. *See First Acceptance Ins. Co. of Georgia, Inc. v. Hughes*, 305 Ga. 489, 496, 826 S.E.2d 71, 77 (2019) (quoting O.C.G.A. §13-2-2(5) ("If an agreement 'is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer.'").

The ambiguity of the operative language is stark, and SCAD could have resolved it with slightly more careful crafting. For example, SCAD could have tied the version of the ADRPA "in effect" to the date the dispute arose or to the period of employment, rather than the date the request for arbitration was made. By tying it to the date of the request, Mr. Payne's understanding that the 2020 ADRPA would be in effect in August 2020 is reasonable. Payne Decl. ¶44. Further, the right to modify the ADRPA on 30 days' notice is SCAD's. However, SCAD's failure to provide the required notice *to Mr.*

---

[5] If this is a scrivener's error—a missing "not"—it is part of a long history of sloppy drafting on SCAD's part, as described in this brief.

*Payne* of the modification does not mean the "in effect at the time a request for mediation and/or arbitration" clause is rendered meaningless. [6]

Alternatively, if the Court determines the "in effect" clause in the ADRPA is ambiguous, the Court may find that resolving the ambiguity without additional evidence is inappropriate at this stage. *See First-Citizens Bank & Tr. Co. v. SJ Pharms., LLC*, No. 1:16-CV-00706-ELR, 2016 WL 9383313, at *4 (N.D. Ga. Dec. 21, 2016) (ambiguity in a contract "'could be clarified only by the introduction of evidence from which a finder of fact could determine the true intent of the parties'[;]" therefore, "because discovery has not yet begun," judgment on the pleadings was inappropriate) (quoting *Greenberg v. Gen. Mills Fun Grp.*, 478 F.2d 254, 256 (5th Cir. 1973)). For example, the notice (if any) of the 2020 modifications SCAD may have provided to then-current SCAD employees could help the jury[7] ascertain the parties' intent. Under

---

[6]   In its Renewed MTCA, Defendant spuriously suggests that, because Mr. Payne sent a pre-litigation demand letter to SCAD's Senior Vice President for Human Resources, he "implicitly admitted that his §1981 claims are subject to the ADRPA and must be arbitrated." Renewed MTCA Br. at n.6. A pre-litigation demand letter is not made into a concession to arbitrate by being directed to the same person who is assigned to receive requests to arbitrate. In fact, the letter indicated that "[i]t is our position that SCAD's arbitration provisions are not enforceable." Payne Decl.¶ 39, Ex. IP-6.

[7] Plaintiff would be entitled to a trial by jury to resolve genuine factual issues around arbitrability, *see* 1st Am. Compl., ECF No. 13, at ¶ 138 (jury demand citing 9 U.S.C. §4 (Federal Arbitration Act)); *see also Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1348 (11th Cir. 2017) (a general jury demand is not sufficient to invoke the jury trial right under 9 U.S.C. §4; the demand must be specific to Section 4 of the FAA).

these circumstances, Mr. Payne would be entitled to discovery. *See, e.g., Reed,* 2020 WL 5659436, \*7 (finding discovery necessary to determine whether plaintiff assented to the arbitration agreement so the court is "able to determine whether there exists a genuine issue of material fact on this question that renders a trial of the issue unnecessary").

### B. The Court Has Authority to Determine Arbitrability in the Absence of Clear and Unmistakable Language Delegating that Authority.

If the Court determines SCAD did not meet its burden to prove the terms of the ADRPA in effect in August 2020, the Court need go no further, and SCAD's motion should be denied. *See Panhandle Fire Prot., Inc. v. Batson Cook Co.,* 288 Ga. App. 194, 197, 653 S.E.2d 802, 805 (2007) ("[T]he threshold question of whether parties to a contract agreed to arbitrate a dispute is normally a matter for a court, rather than an arbitrator, to decide."). However, if the Court determines the 2015 ADRPA was in effect in August 2020, the Court must next determine whether decisions about enforceability of the agreement lie with the Court or with the arbitrator. Because the delegation language in SCAD's ADRPA is muddled, confusing, and contradictory, this Court should decide these questions of arbitrability.[8]

Any evidence of such a delegation must be "clear and unmistakable." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). At best, the ADRPA's

---

[8] As set forth below, §III(C)(3)(a), *infra*, any delegation of arbitrability to the arbitrator also is substantively unconscionable because of the ADRPA's fee-shifting requirement.

delegation of these questions to the Arbitrator is ambiguous and should be construed against the preparer. *See First Acceptance Ins. Co. of Georgia, Inc. v. Hughes*, 305 Ga. at 496. The language of the ADRPA does not show a clear and unmistakable delegation.

SCAD references two provisions in the ADRPA to support delegation. The first only states that "the arbitrator shall have the authority to determine whether, and to what extent, this ADRPA applies to a Dispute between SCAD and an employee." ADRPA/APM Chart at §8. SCAD could have conferred, but did not confer, *sole* authority on the Arbitrator.

The distinction between the arbitrator having *sole* authority or simply the authority in cases brought before it is highlighted by the other provision of the ADRPA addressing this authority, from which SCAD conveniently omits its context. The provision is quoted in full here, with the section SCAD excerpted italicized:

> For Disputes involving non-competition, nonsolicitation, fiduciary or confidentiality obligations, as well as Disputes involving trade secrets, trademarks or intellectual property, the employee or SCAD may, without inconsistency with the ADRPA, petition any court of competent jurisdiction and seek interim, injunctive or other equitable relief until the arbitrator award is rendered or the Dispute otherwise resolved, provided that the employee may not *petition any court concerning the enforceability of this ADRPA* and the arbitrator shall have the sole authority to determine whether, and to what extent, this ADRPA applies to a Dispute between SCAD and an employee.

ADRPA/APM Chart at §8. In context, the italicized language is limited by the first clause of the sentence: "For Disputes involving non-competition, nonsolicitation, fiduciary or confidentiality obligations, as well as Disputes involving trade secrets,

trademarks or intellectual property. . ."[9]  Tellingly, and in contrast with the first

ADRPA provision SCAD quotes, this section of the ADRPA expressly confers "*sole*

authority" (emphasis added) on the arbitrator to determine arbitrability.

Further, the ADRPA authorizes (but does not solely authorize) the Arbitrator to

determine *applicability* of the ADRPA to the dispute, ADRPA/APM Chart at §8

("…whether, and to what extent, this ADRPA *applies* to a Dispute…" (emphasis

added)), but not issues such as enforceability. In other words, according to SCAD's

own language, the arbitrator may determine, for example, the applicability of the

ADRPA to a section 1981 employment discrimination case, but not enforcement issues

such as unconscionability. *See S. Tr. Ins. Co. v. Guidewire Software, Inc.*, No. 5:20-CV-

00327-TES, 2020 WL 6879259, at *3 (M.D. Ga. Nov. 23, 2020) (where delegation clause

does not include "existence" or "validity," it is not "clear and unmistakable.")[10]  In a

---

[9]  Plaintiff brings two claims: a civil rights claim under 42 U.S.C. §1981 and a
declaratory judgment claim on the issue of arbitrability. Neither falls into one of the
categories enumerated in this provision of the ADRPA.

[10]  In its Renewed MTCA reply brief, ECF No. 28, SCAD cites *Terminix Int'l Co., LP v.
Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005) as an example of a decision
delegating arbitrability disputes to the arbitrator based on a clause that does not confer
"sole" authority. However, the AAA delegation rule the Eleventh Circuit relied upon is
crafted with far more specificity than SCAD's delegation provision. *Id. at 1332* ("[t]he
arbitrator shall have the power to rule on his or her own jurisdiction, including any
objections with respect to the existence, scope or validity of the arbitration
agreement."). Further, the AAA rule does not expressly confer "sole" authority on
other matters, as SCAD has done in its ADRPA. SCAD also implies that the Supreme
Court's application of the doctrine of *contra proferentem* in *Lamps Plus, Inc. v. Varela*, 139

case such as this one, in which the Plaintiff has filed a lawsuit in federal court expressly seeking a declaratory judgment finding the ADRPA unenforceable, the ADRPA does not wrest this authority away from this Court.

Ultimately, the distinction between the provision of the ADRPA granting authority—but not sole authority—to the arbitrator to determine applicability of the ADRPA and the provision granting the arbitrator sole authority in certain actions not pertinent to Mr. Payne's claim should reasonably be construed to make a distinction between the two. Further, the language limiting the arbitrator's role to questions of applicability of the ADRPA does not delegate to the arbitrator the enforcement issues at the core of Mr. Payne's argument against arbitrability and, at a minimum, it further muddies the waters. With the heavy presumption in favor of a court determining arbitrability, *Panhandle Fire Prot.*, 288 Ga. App. at 197, and construing any ambiguity against the drafter (SCAD), *First Acceptance Ins. Co. of Georgia*, 305 Ga. at 496, SCAD's argument that only the arbitrator can determine arbitrability must fail. This Court has the authority to determine arbitrability.

### C. The ADRPA and APM are Indefinite and Unconscionable as a Matter of Law and Therefore are Unenforceable.

The FAA allows state law to invalidate an arbitration agreement, provided the

---

S.Ct. 1407, 1418 (2019) somehow overturns the Court's requirement of "clear and unmistakable" delegation. *First Options of Chicago*, 514 U.S. at 944. However, the Court did no such thing. *See S. Tr. Ins. Co.*, 2020 WL 6879259, at *3.

law at issue governs contracts generally and not arbitration agreements specifically. *Bess v. Check Express,* 294 F.3d 1298, 1306 (11th Cir. 2002). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

Under Georgia law, a contract is unenforceable "if its terms are incomplete, vague, indefinite, or uncertain… The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." *Matthews v. Ultimate Sports Bar, LLC*, No. 1:13-CV-2353-TWT, 2016 WL 4035655, at *2 (N.D. Ga. July 28, 2016) (quoting *Kitchen v. Insuramerica Corp.*, 296 Ga. App. 739, 743 (2009) & *Aukerman v. Witmer*, 256 Ga. App. 211, 214 (2002)).  The ADRPA and APM are indefinite because they have contradictory, confusing, and unintelligible terms.

"[T]he basic test for determining unconscionability is 'whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) (citing *NEC Techs., Inc. v. Nelson,* 267 Ga. 390, 478 S.E.2d 769, 771 (1996) (quoting U.C.C. §2–302 cmt. 1)). Georgia law recognizes both procedural and substantive unconscionability. *Id.* "Procedural unconscionability addresses the process of making [a] contract, while substantive unconscionability looks

16

to the contractual terms themselves." *Id.* While Georgia law contemplates both types of unconscionability, both need not be present in the same quantum to render a contract unconscionable.[11] For example, in *Dale*, the Eleventh Circuit held that a provision was substantively unconscionable and thus unenforceable, without even addressing the appellants' argument that the provisions was also procedurally unconscionable. *See id.* at 1219-20 & n.5.[12] Likewise, here, the ADRPA and APM should be found unenforceable because they are procedurally and substantively unconscionable.

### 1. Indefiniteness

When reviewing the ADRPA and the APM together, there are multiple terms that are contradictory and incomprehensible. Because the terms are "incomplete, vague, indefinite or uncertain[,]" *Matthews*, 2016 WL 4035655, *3, the agreement to arbitrate is unenforceable as a matter of law. For example:

- The ADRPA provides that the arbitrator the parties select "must be a

---

[11]  Even if the Court determines Georgia require requires both procedural and substantive unconscionability, the indefinite terms of the ADRPA and APM, as laid out in detail below, make the agreement to arbitrate procedurally unconscionable. *See Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27, 29 (1998) ("comprehensibility of the contract language" is an element of procedural unconscionability).

[12] Though vacated on the basis the U.S. Supreme Court's holding in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) that class action waivers are not unconscionable under the FAA, the Eleventh Circuit similarly only examined the question of whether class action waivers are *substantively* unconscionable, without addressing procedural unconscionability, in *Gordon v. Branch Banking & Tr.*, 419 F. App'x 920, 922 (11th Cir.), cert. granted, judgment vacated, 565 U.S. 1031 (2011).

retired federal judge unless a retired federal judge is not available to hear the dispute in a timely manner." However, the APM only provides that the parties agree that the arbitrators "have a minimum of five (5) years of previous experience or background in the subject matter of the arbitration." The APM continues, "the proposed *mediators* shall include as many retired federal judges as possible who are available to hear the dispute in a timely manner." ADRPA/APM Chart §4 (emphasis added).

- The ADRPA and the APM directly contradict each other with respect to the location of the arbitration. The ADRPA provides that "[a]t the sole election of SCAD, any mediations or arbitrations conducted pursuant to this ADRPA shall be held in Savannah, Georgia, Atlanta, Georgia, or the location where the employee lives or works." ADRPA/APM Chart at §5. The APM, on the other hand, indicates "The time and place for the arbitration hearing shall be determined by the mutual agreement of the parties. If the parties cannot agree, then the Arbitrator shall consult with the parties and determine a time and place for the hearing." *Id.*

- The ADRPA contemplates an internal review process followed by mediation when a party requests arbitration.[13] Under the APM, however, the process moves directly to the selection of an arbitrator when a request for arbitration is submitted. ADRPA/APM Chart §§2-3.

---

[13] Only SCAD, but not the employee, may bypass these steps. ADRPA/APM Chart §§2-3, 6. This shows lack of mutuality as discussed later in this brief, §III(C)(3)(b).

- The APM requires that a party seeking arbitration submit a "Request for Arbitration" form. The ADRPA only requires "a written request to the vice president for human recourses. This request should provide a brief statement of the dispute and the underlying facts." ADRPA/APM Chart §1.

  - The APM contemplates a party filing a Complaint in federal or state court, at which point SCAD would send the party a "Request to Arbitrate form."   APM §II; ADRPA/AMP Chart §1. No such process is contemplated in the ADRPA.

  - The selection of the rules and procedures governing arbitration set forth in the ADRPA are confusing and contradictory. The provision provides,

> The following rules and procedures shall apply to and be followed in the arbitration phase of the ADRPA: statutes of limitations and standing requirements applicable to the substantive claim, all rules of pleading, all rights to discovery, all rules of evidence, and all rights to resolution of the dispute by means of motions for summary judgment and judgment on the pleadings. To the extent that there exists a choice between federal or state rules and procedures as identified above, federal rules and procedures shall apply.

ADRPA at 35; ADRPA/AMP Chart n.1. This makes no syntactical sense. The ADRPA then goes on to indicate "[t]he parties agree that the arbitration shall be conducted in accordance with and subject to, the rules and procedures set forth in the Arbitration Procedures" followed by an apparent link to the APM. *Id.* §9. The APM then sets forth its own rules and procedures, some consistent with the Federal Rules of Civil Procedure and some not. For example, while the APM suggests discovery "be

conducted in accordance with Rules 26 through 37 of the Federal Rules of Civil Procedure," *Id.* §11(a), the APM provides expansive requirements for releases of records regarding a party's current and past employers and, in cases involving any claim of physical, mental, or emotional harm, a release of all medical records. Though the APM allows a party to petition the arbitrator for a protective order related to the releases, the APM pre-imposes an obligation on an aggrieved employee, without a related discovery demand, to sign the far-reaching and intrusive releases. *Id.* §11(d).

Because the ADRPA and APM are replete with vagueness, uncertainty, and contradiction, and indefiniteness, they are unenforceable as a matter of law.

### 2.  Procedural Unconscionability

With respect to procedural unconscionability, courts look to "a non-inclusive list of . . . factors . . . includ[ing] the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Mullis*, 234 Ga. App. at 29 (1998). Procedural unconscionability focuses on two factors: "oppression" and "surprise." *Id.* "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice." *Id.* "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* at 30.

Further, while there is no requirement that arbitration provisions in a contract be conspicuous in Georgia law, *see In re Checking Account Overdraft Litig. MDL No. 2036*, 672 F.3d 1224, 1229 (11th Cir. 2012), a number of courts that have upheld such provisions have frequently noted that conspicuousness of such provisions can ease concerns about procedural unconscionability. *See, e.g.*, *Id.* (noting paragraph in all caps, bold, and underlined stating acceptance of binding arbitration was conspicuous and not procedurally unconscionable); *Johnson v. Wells Fargo Bank, N.A.*, 2015 WL 12591792, at *4 (N.D. Ga. June 17, 2015) (observing that bolded text in all caps noting waiver of jury trial undercut argument that it was procedurally unconscionable).

The "comprehensibility of the contract language," *Mullis*, 234 Ga. App. at  29, element of procedural unconscionability is addressed in the discussion of indefiniteness, *supra*. Beyond that, the ADRPA is buried and undistinguishable from 141 other entries in a 64-page handbook, and the ADRPA itself is in miniscule print with no subject headings. The link to the APM itself is buried within the ADRPA and is not distinguished from the remaining text.

### 3.  Substantive Unconscionability

To determine substantive unconscionability, courts focus on "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Dale*, 498 F.3d at 772. Based on a host of flaws in the ADRPA and APM, including the prohibitive costs of the

arbitration procedure, a lack of mutuality, the unrepresentative pool of arbitrators, the unclear standards to be applied in an arbitration, and the confidentiality provisions, the agreement is substantively unconscionable.

### a. Costs of Arbitration

The ADRPA violates public policy and is unconscionable because the costs of the arbitration will be prohibitive for Mr. Payne to effectively vindicate his claims. Unlike the plaintiffs in the cases SCAD cites, Mr. Payne's costs here are not just "speculative fear" *see, e.g., Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279 (11th Cir. 2015) (concluding that plaintiff had not shown prohibitive costs when he cited a cost estimate with no evidence to support it); *American Family Life v. Hubbard*, 759 F. App'x. 899, 906 (11th Cir. 2019) (same, where plaintiffs proffered no evidence of fee estimate or inability to pay). Rather, the cost-shifting provision in the ADRPA is mandatory, ADRPA/APM Chart §7, SCAD has used the specter of cost-shifting to intimidate employees in prior arbitrations, Holcomb Decl. ¶9, Ex. H-1, & ¶¶10-14. Mr. Payne proffers an expert declaration substantiating the significant costs of arbitration, and Mr. Payne's own declaration details his inability to pay such costs and his unwillingness to risk his and his family's livelihood by filing arbitration. Payne Decl. ¶¶45-60, 62.

As explained in the attached declaration of Professor Imre Szalai, a retired federal judge's determination of whether the case is arbitrable alone would likely cost upwards of $8,400. March 25, 2021 Decl. of Imre Szalai ("Szalai Decl.") ¶¶9-17. Beyond

that, resolving the case through a hearing on the merits before an arbitrator would likely cost an additional $39,600, if not more, not factoring the arbitrator's expenses, rental space, and administrative or filing fees. *Id.* ¶¶9-13, 18-24. Finally, an appellate arbitration, as allowed under the APM, would cost an additional $300-$600 per hour. In all, Mr. Payne likely would face a bill, for the arbitrator's hours alone, in excess of $48,000 if he does not prevail in an arbitration.

Although SCAD suggests that the cost-sharing provisions of the ADRPA are no different than what they would be in court, Renewed MTCA Br. at 20, this is simply untrue. First, the arbitrator's fees are "[t]he largest cost component of an arbitration lacking a counterpart in litigation." Szalai Decl. ¶12. Further, under the ADRPA, both parties must pay their own costs and attorneys' fees, in addition to the losing party paying the arbitrator's fees--the allocation of which is not appealable to a court of law. This is much more onerous for Mr. Payne than 42 U.S.C. §1988, which awards attorney fees and costs to a prevailing *plaintiff* "in all but special circumstances" and only awards fees to a prevailing *defendant* if the case is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Cordoba v. Dillards, Inc.*, 419 F.3d 1169 (11th Cir. 2005) (holding that district court abused its discretion in awarding fees to prevailing defendant where plaintiff's argument was exceedingly weak and conjectural but not entirely without foundation that employer had terminated her because of her disability). Under no circumstances does section 1988

force a non-prevailing party to pay an hourly fee to the judge, jury, and the appellate court, as the cost-shifting provision of the ADRPA effectively does. The ADRPA's drastic departure from the section 1988 fee-shifting scheme inhibits Mr. Payne's effective vindication of his rights.

The cost-shifting in the ADPRA is not merely speculative. Rather, SCAD uses it as a weapon to intimidate employees during the arbitration itself. SCAD's former Director of Giving, Darnell Holcomb, who also is a Black man, brought arbitration against SCAD similarly alleging race-based discrimination. Holcomb Decl. ¶¶1-7. In SCAD's November 4, 2020 deposition of Mr. Holcomb, SCAD's counsel made Mr. Holcomb read the section of the ADRPA SCAD's counsel had highlighted and asked, "So do you understand that in the event that you do not prevail in this arbitration, that you will be responsible for the arbitrator's fees in this case?" *Id.*, Ex. H-1 at 164:11-165:13. Though Mr. Holcomb's attorney objected on the basis that SCAD's counsel was "trying to scare" Mr. Holcomb, "harassing" him, "just being a bully," and trying "to intimidate him," *Id. at* 165:14-166:18, SCAD's counsel forced Mr. Holcomb to respond, doubling down on the threat of cost-shifting to prevent Mr. Holcomb's attorney from raising the intimidation with the arbitrator: "Go ahead. You want to end it, you end it. We'll go in front of the arbitrator, and we'll start it up again. It's just more cost your client's going to be responsible for if he loses." *Id.* at 165:22-166:8. In the end, when faced with what he understood to be the possibility of as much as $200,000 in fees and

costs, Mr. Holcomb withdrew his arbitration; a decision he would not have made but for the cost-shifting. Holcomb Decl. ¶9-14.

Finally, Mr. Payne, in his declaration, goes into detail about his personal and family finances. Payne Decl. ¶¶45-59. While he is confident in his case, he is not able to afford to risk his and his family's livelihood by facing $48,000 or more for the arbitration costs. *Id.* ¶57-60, 62. Based on his income and expenses, it would take him over three years to pay for the cost of arbitration, assuming he has no other unforeseen expenses. *Id.* ¶59. If his family grows, he will have to draw money out of his savings to make ends meet even without the cost of arbitration. The cost of arbitration on top of that would be "financially disastrous for us." *Id.* He is unable to pay these costs and therefore would be unable to effectively use the arbitral forum. *Id.* ¶58-60.

### b.  Lack of Mutuality

The ADRPA and the APM lack mutuality. Although Georgia law does not require "mutuality of remedy" for an arbitration agreement to be conscionable, *see, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005), the imbalances in the ADRPA and APM go beyond nonmutual remedies, but rather SCAD's alternative dispute resolution process from the start is does not impose "mutuality of obligation" and therefore is unconscionable. *Id.; cf. Kemira, Inc. v. Williams Investigative & Sec. Servs., Inc.*, 215 Ga. App. 194, 198, 450 S.E.2d 427, 431 (1994) (""[w]ords of promise which by their terms make performance entirely optional with the 'promisor'

whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise.") (quoting Restatement, 2nd, Contracts, §2(1)).

The following provisions of the ADRPA and APM lack mutuality:

- When a party submits a request for arbitration to SCAD's Vice President for HR, HR holds a meeting between the aggrieved employee and the appropriate SCAD representative to informally resolve the dispute. *Employee* participation in the process is mandatory. At the conclusion of the internal review process, SCAD HR issues a letter indicating the process has been completed. ADRPA/APM Chart §2. At its option, however, only SCAD may elect to bypass this step. *Id.*

- Once the letter is issued, the parties have 30 days to notify the other that they are not satisfied with the resolution. Failure to comply with this notice requirement "shall be deemed a waiver of any right to continue the ADRPA process with respect to the Dispute at issue and shall be deemed a final conclusion and resolution of the dispute." *Id.* §6. Again, however, SCAD—and not the employee—may bypass this step. *Id.* §§2 and 6.

- If a party indicates in writing within 30 days that it is not satisfied with the internal review process, the dispute moves to mediation. ADRPA/APM Chart §3. However, SCAD may bypass this step, as well. *Id.* This is what occurred in Mr. Payne's case. When Mr. Payne submitted his August 2020 demand letter to SCAD, SCAD immediately insisted on arbitration. Had SCAD suggested pre-litigation mediation, Mr.

Payne would have agreed to do so. Payne Decl. ¶42.

- A party has 30 days to notify the other that they are not satisfied with the outcome of the mediation or face waiver of its rights under the ADRPA. ADRPA/APM Chart §6. At that point, the case moves to the "next stage" of the process: arbitration. *Id.* Yet, according to the ADRPA's language, only SCAD may skip this notice step. Therefore, if *SCAD* is not satisfied with the outcome of the mediation, SCAD may elect to wait for as long as it chooses within the applicable statute of limitations—it does not need to comply with the 30-day notice mandate applicable to employees—to provide notice and seek to initiate the arbitration. *Id.*

- The same 30-day notice requirement applies to an appeal of an arbitrator's decision to a second arbitrator. SCAD, but not the employee, may ignore the notice requirement and apparently may appeal at any time. *Id.*

- SCAD has sole election of the forum, though, as noted above, the ADRPA and AMP contradict each other in this respect. ADRPA/APM Chart §5. While SCAD suggests this provision is "benign," Mr. Payne still will have to cover the costs of travel for anyone other than himself he needs to be present at the arbitration—any witnesses, experts, and the attorneys arguing his case. The ADRPA covers none of these travel expenses, making arbitration that much more of a costly option.

- Though either party ostensibly could bring claims for injunctive or other equitable relief for disputes involving "non-competition, nonsolicitation, fiduciary or

confidentiality obligations, as well as Disputes involving trade secrets, trademarks or intellectual property," in reality these claims are far more likely—and likely only have been—brought by SCAD. *Id.*; *see also* Werner Decl. ¶4.

### c. Selection of the Arbitrator

The ADRPA provision designating an unrepresentative and racially homogenous pool of potential arbitrators is contrary to public policy. Provisions in a contract may contravene public policy if they undermine the purpose and spirit of Georgia's statutory scheme. *See Davis v. Oasis Legal Finance Operating Co., LLC*, 936 F.3d 1174 (11th Cir. 2019). Here, the ADRPA requires in the first instance that the arbitrator "*must* be a retired federal judge." ADRPA/APM Chart §4. Only if the retired federal judges are unavailable may the parties choose another arbitrator.[14] *Id.* To Plaintiff's knowledge, the two retired federal judges in Georgia who are available to arbitrate are both white. *See* FAC ¶107 & n.6. This is the case even though the population of the ten counties comprising the Northern District of Georgia is about 35.5 percent Black. *Id.* The ADRPA denies Mr. Payne a meaningful opportunity to have his claims heard by a

---

[14] Defendant suggests it has previously designated people who are not retired federal judges as arbitrators. However, the relevant question is the actual terms of the contract, not any belated modifications Defendant seeks to propose through legal argument. *See, e.g., Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1311 (N.D. Ga. 2012) (in considering unconscionability argument, rejecting allegations about performance of contract in favor of actual terms of the contracts).

panel of arbitrators reflecting his background.[15]  As the United States Supreme Court has reasoned in the analogous situation of jury selection, "selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Batson v. Kentucky*, 476 U.S. 79 (1986). Georgia likewise recognizes the importance of ensuring that the right to a factfinder drawn from a pool of citizens that represents the community to ensure that parties from all backgrounds receive equal treatment in litigation. *See Flanders v. State*, 279 Ga. 35, 42 (2005) (Benham, J., concurring) (noting that "the right to a jury drawn from a fair cross-section of the community" is ultimately a right that belongs to the community and not just the individual). Taken together, the ADRPA's limitation of the pool to retired federal judges if available does not generate a fair cross-section of the community and thus violates public policy and is unconscionable.

### d.  Confidentiality.

The confidentiality provision of the ADRPA, which prohibits any information about the dispute from being disclosed to the media or other third parties, contributes to the ADRPA's unconscionability. For one, it is unclear that SCAD can insist on enforcing this provision going forward, as SCAD itself has submitted a hearsay

---

[15]  Although Defendant suggests that the arbitration could be conducted by retired judges outside of Georgia because of COVID-19, Plaintiff expects (and dearly hopes) that by the time the motion practice is resolved, courts and arbitration proceedings will be in-person again.

declaration regarding the merits of Mr. Payne's claim on the public docket and recited the same in its Renewed MTCA. Moreover, the confidentiality provision puts Mr. Payne at a greater disadvantage, as SCAD is a repeat player in the arbitration proceedings under the agreement and therefore has knowledge about prior proceedings and results. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (noting that confidentiality provisions were more favorable to employers but not so offensive as to be invalid). When considered alongside the accompanying nonmutual procedural requirements, the unrepresentative pool of arbitrators, the prohibitive costs of arbitration compared to federal court, and the ambiguity as to which rules will apply, the ADRPA is substantively unconscionable.

### D. Indefinite and Unconscionable Terms of the ADRPA and APM Cannot Be Severed

Because the unconscionable terms of the ADRPA permeate the agreement, they should not be severed but should instead void the agreement as a whole. Where there are unconscionable provisions of an arbitration agreement, public policy weighs heavily in favor of voiding the entire contract rather than just carving out the unlawful provisions. In *Matthews v. Ultimate Sports Bar, LLC*, No. 1:13-CV-2353-TWT, 2016 WL 4035655, at *3 (N.D. Ga. July 28, 2016) this Court declined to sever unconscionable terms from an arbitration agreement—instead finding the entire agreement unenforceable—because it could not be fixed "without rewriting the agreement with

respect to essential aspects….” *Id.* If the multiple unconscionable terms are stricken

from the ADRPA and APM, Mr. Payne would be left with an agreement and governing

procedures that cannot hold water.

Further, allowing severance of a host of unconscionable terms from an

arbitration agreement incentivizes employers such as SCAD to include as many

unconscionable provisions as they can into arbitration agreements, confident that any

that are too objectionable will simply be severed without jeopardizing the arbitration

arrangement as a whole. *See Matthews*, 2016 WL 4035655 at *3 (noting that “[o]ther

courts have foreclosed severance if the unconscionable provisions compromise

essential aspects of the agreement as a whole, or if they demonstrate a systematic effort

to create a one-sided, employer-friendly forum.”)(citing *Cannon v. South Atlanta

Collision Center, LLC*, No. 1:11-CV-1030-TWT-ECS, 2012 WL 1004914, at *8 (N.D. Ga.

Feb. 27, 2012), *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 206-07 (3d Cir. 2010)); *cf. Perez

v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001) (citations omitted),

*subsequently vacated on procedural grounds*, 294 F.3d 1275 (11th Cir. 2002) (severing an

invalid provision from an arbitration clause “would reward” the drafter of the

provision and “fail to deter similar conduct by others,” which could ultimately “deter

an unknowledgeable [party] from initiating arbitration” and also “add an expensive

procedural step" of seeking severance in court before moving to arbitration).[16]

### E. SCAD Has Waived Any Right It Arguably Had to Arbitration Through Its Conduct.

Although SCAD now seeks to enforce the ADRPA, it has waived any arguable entitlement to arbitration by its failure to follow its own procedures and by pursuing confidentiality agreements with a key witness to Mr. Payne's case, and presumably others, with the effect of curtailing the evidence Mr. Payne can present. "[I]t is well established that a party may waive its right to compel arbitration by acting in a manner which is inconsistent with the right of arbitration," *Epps v. Rockmo Entm't, LLC*, 849 S.E.2d 510, 514 (Ga. Ct. App. 2020), *reconsideration denied* (Nov. 17, 2020), and "in so acting, has in some way prejudiced the other party," *see Langfitt v. Jackson*, 284 Ga. App. 628, 633, 644 S.E.2d 460, 464 (2007). "There is no set rule . . . as to what constitutes a waiver . . . of the arbitration agreement." *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971).

Troublingly, as discussed in the Statement of Facts, §II(C), *supra*, SCAD offered at least one of Mr. Payne's potential witnesses $36,630 in scholarship money in exchange for a confidentiality agreement. By substantially prejudicing Mr. Payne's rights in

---

[16] Though *Perez* is not binding because it was later vacated on procedural grounds, the Eleventh Circuit's reasoning in *Perez* is nevertheless persuasive. SCAD's ADRPA and APM are clear illustrations of why a "see what sticks" approach to arbitration agreements cannot be allowed.

arbitration, SCAD has waived any entitlement to arbitration.

The question of whether SCAD entered into confidential settlement agreements with other former Fishing Team members, which could only be answered through discovery, *Reed,* 2020 WL 5659436, *7, impacts the arbitrability issue before this Court. The agreements effectively would preclude any student who signed the agreement from voluntarily participating or providing information related to Mr. Payne's claims. While Mr. Payne could compel the students to produce documents and attend depositions in the discovery process of federal litigation, no such right exists in arbitration. Mr. Payne's only way of securing information from the students would be to seek a subpoena from a state court compelling the document production and appearance of the student at the arbitration hearing itself.

In its Renewed MTCA, SCAD makes much of the vague language in its own APM indicating that Federal Rules of Civil Procedure 26 through 37 apply to the arbitration. Renewed MTCA Br.at n.9; ADRPA/APM Chart §11(a). However, though the ADRPA or APM themselves expressly do not prohibit seeking to compel a non-party's participation in discovery, ADRPA/APM Chart §11(b), the Eleventh Circuit, in *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.,* 939 F.3d 1145, 1159 (11th Cir. 2019), concluded that "the plain language of the [FAA] is unambiguous in requiring witnesses to appear before an arbitrator and bring any documents with them, *thus prohibiting pre-hearing discovery from non parties.*"  *Id.* (emphasis added).

As such, without the opportunity to engage in fact finding from the students before the hearing, Mr. Payne would confront the students for the first time at the hearing with no prior knowledge of their position or prospective testimony.

Though the question of whether encouraging or having prospective witnesses sign confidentiality agreements to prevent cooperation with fact finding in an arbitration appears to be an issue of first impression, it is analogous to the interference with third-party discovery in litigation. Courts routinely prohibit such interference and sanction parties for engaging in this behavior. *See, e.g., WellStar Health Sys., Inc. v. Kemp*, 324 Ga. App. 629, 635, 751 S.E.2d 445, 451 (2013) (trial court did not abuse discretion by disqualifying attorneys who pressured non-party expert witness not to cooperate (but finding entering default on behalf of aggrieved party was too severe a sanction)); *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co.*, No. 2:05-CV-01318-BESGWF, 2006 WL 1582122, at *3 (D. Nev. June 5, 2006) (ordering plaintiff not to advise non-party witnesses against speaking with defendant's counsel). Thus, SCAD's conduct has waived any right to arbitration. [17]

---

[17] Defendant's effort to buy the silence of the prospective witness also highlights another bizarre provision of its APM. According to the APM, "if a party takes any action to discourage a witness from cooperating with discovery demands, the Arbitrator *shall preclude the party* from calling this witness at the arbitration hearing…." ADRPA/APM Chart §11(c) (emphasis added). This, of course, does not address a situation where a party interferes with an adverse witness.

### F.  The Court Should Not Grant SCAD's Motion Without First Allowing Limited Discovery on Arbitrability.

Before any ruling in favor of SCAD on the arbitration agreement, Mr. Payne should first have an opportunity to conduct limited discovery regarding arbitrability — namely the applicable version the ADRPA, unconscionability of the purported agreement, and waiver through conduct of SCAD. *See Reed v. Eastside Med. Ctr., LLC*, No. 1:19-CV-03967-SDG, 2020 WL 5659436, at *7 (N.D. Ga. Sept. 23, 2020).

### G. Sanctions Are Not Warranted

SCAD has included a cursory request, relegated to a footnote, for sanctions against Mr. Payne and his counsel. SCAD chose to ignore the Rule 11(c) "safe harbor" requirements by not serving Mr. Payne with the proposed motion for sanctions 21 days before filing it with the Court. *See* Fed. R. Civ. P. 11(c)(2). Further, Mr. Payne's arguments are "warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b), such that the Court can find that that no agreement to arbitrate was formed, the ADRPA is indeterminate and unconscionable, and effectively waived. Thus, the specter of Rule 11 sanctions, should vanish.

### IV.  CONCLUSION

For the foregoing reasons, Mr. Payne asks this Court to deny SCAD's motion.

Respectfully submitted this 20th day of July, 2021.

*/s/ Daniel Werner*

Daniel Werner
Georgia Bar No. 422070
dan@decaturlegal.com

James Radford
Georgia Bar No. 108007
james@decaturlegal.com

RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE AND FONT</u>

This is to certify that on July 20, 2021, I prepared the foregoing Plaintiff's

Opposition to Defendant's Renewed Motion to Dismiss and to Compel Arbitration in

Book Antiqua, 13-point type in accordance with L.R. 5.1(C), and that I electronically

filed the document with the Clerk of Court using the CM/ECF system, which sent

notification of such filing to all counsel of record.

/s/ Daniel Werner
Daniel Werner
Attorney for Plaintiff